IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| PATRICK ALBERT BYERS, Jr., #43310-037, | ) ) ) | |
| **Plaintiff,** | ) ) | |
| vs. | ) ) | Case No. 21-cv-01718-JPG |
| DAN SPROUL, J. LECLAIR, MELISSA WINN, and TAMMY HOTTES, | ) ) ) ) ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Patrick Beyers, Jr., is an inmate in the custody of the Federal Bureau of Prisons ("FBOP") and filed this action while he was housed at the United States Penitentiary in Marion, Illinois ("USP-Marion"). (Doc. 1-1, pp. 2-8). In his Complaint filed pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), Byers claims that USP-Marion officials have rationed toilet paper since March 2020, when demand for the item soared at the outset of the COVID-19 pandemic and caused a nationwide shortage of toilet tissue. Instead of three rolls, each inmate at USP-Marion received only two rolls of toilet paper per week. (Doc. 1-1, pp. 5-7).

This is a religious issue for Byers, who describes himself as a Sunni Muslim. According to his deeply held religious beliefs, Byers must cleanse himself before praying, and failure to properly do so invalidates his prayers. He claims that three rolls of toilet paper are sufficient for this purification ritual, but two rolls are not. As a result, Byers must choose between praying without proper purification, bartering for toilet tissue with other inmates, or using newspapers or washcloths to cleanse himself. (*Id*.).

1

Byers asserts that the prison's policy interferes with his religious exercise in violation of the First Amendment; constitutes cruel and unusual punishment in violation of the Eighth Amendment; and amounts to negligence, civil conspiracy, and intentional infliction of emotional distress by the defendants in violation of Illinois law.  (*Id*. at 5-6).  He seeks declaratory, monetary, and preliminary injunctive relief.[1]  (*Id*. at 7).

### Claims

Based on the allegations in the *pro se* Complaint, the Court finds it convenient to designate the following enumerated counts, consistent with Byers' designation of the same:

| | |
|---|---|
| **Count 1:** | First Amendment free exercise claim for money damages against Sproul, LeClair, and Winn, in their individual capacities pursuant to *Bivens*, for interfering with Byers' free exercise of religion by refusing to issue him enough toilet paper to purify himself before praying and thereby invalidating his Muslim prayers. |
| **Count 2:** | First Amendment claim for injunctive relief against Sproul, LeClair, Winn, and Hottes, in their official capacities pursuant to *Bivens*, by enjoining them from further violations of Byers' First Amendment rights by denying him three rolls of toilet paper per week at USP-Marion. |
| **Count 3:** | Eighth Amendment claim for money damages against Sproul, LeClair, Winn, and Hottes, in their individual capacities pursuant to *Bivens*, for subjecting Byers to cruel and unusual punishment by denying him adequate toilet paper at USP-Marion. |
| **Count 4:** | Eighth Amendment claim for injunctive relief against Sproul, LeClair, and Hottes, in their individual capacities pursuant to *Bivens*, enjoining them from further violation of Byers' Eighth Amendment rights by denying him three rolls of toilet paper per week at USP-Marion. |
| **Count 5:** | Illinois civil conspiracy claim against Sproul, LeClair, Winn, and Hottes for reaching an agreement to deny Byers and other inmates their right to receive adequate toilet paper at USP-Marion. |

---

[1] Shortly after this case was removed, Byers transferred out of USP-Marion (*see* Doc. 8). Since then, he has filed no motion indicating that the restriction on toilet paper is in effect at his current facility.  His request for preliminary injunctive relief is therefore dismissed without prejudice as being **MOOT**.

**Count 6:**      Illinois negligence claim for money damages against Sproul, LeClair, Winn, and Hottes for breaching their duty to provide Byers with adequate toilet paper and causing him extreme discomfort at USP-Marion.

**Count 7:**      Illinois intentional infliction of emotional distress claim against Sproul, LeClair, Winn, and Hottes for knowingly and intentionally denying Byers sufficient toilet paper at USP-Marion and causing him to suffer emotional discomfort, anxiety, and grief.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by the Court.  Any other claim that is mentioned in the Complaint but not addressed herein should be considered dismissed without prejudice as inadequately pled under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## Removal

Byers filed his Complaint in state court.  (Docs. 1 and 1-1).  Defendants removed the case to federal court pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1), and the Westfall Act, 28 U.S.C. § 2679.  (Doc. 1).  Byers made no objection to removal, and the time for doing so has passed.  As discussed below, the Court finds that removal is proper.

**A.      Federal Officer Removal – Counts 1, 2, 3, and 4**

To the extent this matter is properly brought under 28 U.S.C. § 1331, Defendants maintain that removal is appropriate under 28 U.S.C. § 1442(a)(1).  (Doc. 1 at ¶ 12).  Section 1331 vests this court with original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States.  28 U.S.C .§ 1331.  Byers brings four claims for constitutional deprivations pursuant to *Bivens*, including two First Amendment claims (Counts 1 and 2) and two Eighth Amendment claims (Counts 3 and 4).  These claims arise under the Constitution of the United States, and this Court has original jurisdiction over them.  *See* 28 U.S.C. § 1331.

Section 1442(a)(1) governs removal of claims against officers of the United States who are sued in their individual or official capacity for acts under color of such office or in the performance

of such duties.  All four claims stem from allegations of misconduct by the federal official defendants while they were acting under the color of their office or in the performance of such duties.  The federal officer removal statute governs removal of Counts 1, 2, 3, and 4.

Section 1442(a)(1) provides for removal to the United States District Court embracing the place where the civil action is pending.  28 U.S.C. § 1442(a)(1).  This action was originally filed in the Circuit Court for the First Judicial Circuit in Williamson County, Illinois.  *See Patrick Albert Byers, Jr. v. Dan Sproul, et al.*, Case No. 21-L-91.  (Doc. 1 at ¶ 1).  Williamson County is located in this federal judicial district.  The Court finds that Counts 1, 2, 3, and 4 were properly removed to this court under the federal officer removal statute, and these claims are subject to screening under Section 1915A.

**B.      Removal under Westfall Act – Counts 5, 6, and 7**

The Westfall Act provides for removal of actions commenced in state court to the federal district court "embracing the place in which the action or proceeding is pending."  *See Osborn v. Haley*, 549 U.S. 225, 230 (2007) (citing 28 U.S.C. § 2679(d)(2)).  The Act amended the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671-80, to require substitution of the United States as a defendant in a tort suit brought against a government employee.  *Osborn*, 549 U.S. at 230.  It grants federal employees absolute immunity from tort claims arising out of acts undertaken in the course and scope of a federal employee's employment.  *Id*. at 230 (citing 28 U.S.C. § 2679(b)(1)).  The Act empowers the Attorney General to certify that a federal employee sued for wrongful or negligent conduct "was acting within the scope of his office or employment at the time of the incident out of which the claim arose," and renders the Attorney General's certification "conclusiv[e] . . . for purposes of removal."  *Id*. (citing 28 U.S.C. §§ 2679(b)(1), (d)(1), (2)).  Upon

4

such certification, the United States is substituted as the defendant in place of the federal employee, and the employee is dismissed. *Id*. (citing § 2679(d)(2)). The FTCA then governs the tort claims.

This action involves three Illinois tort claims against the defendants for civil conspiracy (Count 5), negligence (Count 6), and intentional infliction of emotional distress (Count 7). Defendants provided proper certification[2] of their employment with the BOP during the relevant time period. (*Id*. at ¶¶ 3-8). Defendants also assert that they were acting within the scope and course of their federal office or employment. (*Id*.). They properly removed their tort claims to this federal judicial district. Given this, the United States shall be substituted in place of the individual defendants in Counts 5, 6, and 7, and the individual defendants shall be dismissed. Counts 5, 6, and 7 shall proceed as FTCA claims against the United States, and the claims are subject to Section 1915A review.

## Section 1915A Review

The Complaint is now subject to preliminary review under 28 U.S.C. § 1915A. *See Whiteside v. Hill, et al.*, No. 21-cv-00806-JPG, 2022 WL 970586 (S.D. Ill. March 31, 2022) (conducting preliminary review of removed complaint under 28 U.S.C. § 1915A). Section 1915A requires the Court to screen prisoner complaints to filter out non-meritorious claims. 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, meritless, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

---

[2] A United States Attorney may issue the certification in lieu of the Attorney General. *See* 28 C.F.R. § 15.4(a). In the instant case, the United States Attorney delegated this authority to the Chief of the Civil Division, who certified that all Defendants were acting within the scope of their employment at the time of the incidents out of which the claims arose. (Doc. 1-2).

A.      *Bivens* **Claims**

Counts 1 through 4 are all constitutional claims brought pursuant to *Bivens*. The Supreme Court in *Bivens* acknowledged that "victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." *Carlson v. Green*, 446 U.S. 14, 18 (1980) (citing *Bivens*, 403 U.S. 388). However, the Court has explicitly recognized this implied damages remedy in only three contexts, including a claim for an unlawful search and seizure in violation of the Fourth Amendment in *Bivens*, 403 U.S. 388 (1971); a claim for gender discrimination in violation of the Fifth Amendment in *Davis v. Passman*, 442 U.S. 228 (1979); and a claim for the denial of medical care in violation of the Eighth Amendment in *Carlson v. Green*, 446 U.S. 14 (1980). In the four decades that have since passed, the Supreme Court has not recognized a *Bivens* remedy in any other context.

Moreover, the Supreme Court has cautioned lower courts against expanding this remedy into new contexts absent special circumstances. *Ziglar v. Abbasi*, -- U.S. --, 137 S.Ct. 1843 (2017). To determine whether a *Bivens* remedy is available to Byers for his claims against the defendants, the Court must ask whether the claim presents a new *Bivens* context. *Id*. at 1859. If so, the Court must also consider whether any special factors counsel hesitation in granting an extension of this remedy into the next context. *Id*.; *Hernandez v. Mesa*, 140 S.Ct. 735 (2020).

## Count 1

Count 1 involves a claim of interference with Byers' religious exercise caused by the denial of three rolls of toilet paper necessary to purify himself before praying. The Supreme Court has not recognized a *Bivens* remedy for First Amendment claims. *See Wood v. Moss*, 572 U.S. 744, 757 (2014) (noting that the Supreme Court has not recognized an implied damages remedy under First Amendment); *Reichle v. Howards*, 566 U.S. 658, n.4 (2012) ("We have never held that *Bivens*

6

extends to First Amendment claims."). In addition, Byers' claim for interference with his religious exercise is unlike the three claims previously recognized by the Supreme Court in *Bivens*, *Davis*, and *Carlson*. The claim presents a new *Bivens* context.

Therefore, the Court must consider whether any special factors counsel against inferring a *Bivens* damages remedy here. This inquiry focuses on "whether the Judiciary is well-suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 137 S.Ct. at 1857-58. It involves consideration of alternative remedies that are available to Byers. The existence of other remedies "alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id*. The *Abbasi* Court emphasized that "when alternative methods of relief are available, a *Bivens* remedy usually is not." *Abbasi*, 137 S.Ct. at 1863 (citations omitted).

The Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb *et seq*., provides an alternative method of relief. RFRA prohibits the Federal Government from imposing substantial burdens on the exercise of religion, absent a compelling interest pursued using the least restrictive means possible. *Tanzin v. Tanvir*, 141 S.Ct. 486, 489 (2020). A person whose religious exercise has been unlawfully burdened may seek "appropriate relief" under RFRA. *Id*. According to the Supreme Court and the Seventh Circuit Court of Appeals, the rights conferred by RFRA are more expansive than the free exercise rights protected by the First Amendment. *See Holt v. Hobbs*, 135 S.Ct. 853, 859-60 (2015); *Korte v. Sebelius*, 528 Fed. Appx. 583, 588 (7th Cir. 2012) (noting that "RFRA protects the same religious liberty protected by the First Amendment, and it does so under a more rigorous standard of judicial scrutiny."). Moreover, RFRA offers monetary and injunctive relief. *Tanzin v. Tanvir*, 141 S.Ct. 496 (2020). The scope of protections and availability

of relief under RFRA are factors that counsel hesitation in expanding the *Bivens* remedy into the First Amendment religious context.  Accordingly, Count 1 shall be dismissed without prejudice.

### Count 2

In Count 2, Byers seeks an order enjoining further interference with his religious exercise through the denial of adequate toilet paper.  (Doc. 1-1, p. 5-7).   He requests injunctive relief against the defendants in their official capacities and pursuant to *Bivens*.  (Doc. 1-1, p. 6).  The Court notes several problems with this claim.  First, *Bivens* provides an implied *damages* remedy against a federal agent in his or her *individual* capacity.  *Bivens*, 403 U.S. 388 (1971)).  Byers seeks *injunctive* relief against federal officials in an *official* capacity.  (Doc. 1-1, p. 6).  Second, Count 1 does not survive screening under Section 1915A, so this related request for relief under *Bivens* also fails.  Third, Byers has an alternative avenue to relief under RFRA, if he wishes to pursue a RFRA claim in an amended complaint.  Count 2 shall be dismissed without prejudice.

### Count 3

Count 3 involves an Eighth Amendment claim for unconstitutional conditions of confinement based on the denial of adequate toilet paper.  Even if the Court assumes, without deciding, that *Bivens* provides an implied damages remedy for such claims post-*Abbasi*, Byers has set forth insufficient allegations to state a claim for this constitutional deprivation.

The Eighth Amendment prohibits prison conditions that amount to cruel and unusual punishment.  The amendment reaches "beyond barbarous physical punishment" to prohibit "'the unnecessary and wanton infliction of pain.'"  *Harris v. Fleming*, 839 F.2d 1232, 1234 (7th Cir. 1988) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981)).  Penal conditions may not "deprive inmates of the minimal civilized measures of life's necessities."  *Chapman*, 452 U.S. at 347.  At the same time, prisoners are not entitled to special treatment.  *Harris*, 839 F.2d at 1235

("Inmates cannot expect the amenities, conveniences and services of a good hotel. . . . The constitutional test requires courts to look to 'the evolving standards of decency that mark the progress of a maturing society.'").

An Eighth Amendment claim based on conditions of confinement consists of two parts. First, the inmate must show that the alleged deprivation is sufficiently serious from an objective standpoint. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). Second, the inmate must also demonstrate that each defendant acted with a subjectively culpable state of mind, which, in this context, is deliberate indifference. *Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir. 2009). The allegations satisfy neither component of this claim at screening.

Byers' access to two rolls of toilet paper per week not a serious enough deprivation to support an Eighth Amendment claim. When presented with a claim for unhygienic conditions, the court asks whether the prisoner had the ability to clean himself. *See Johnson v. Dunahay*, 2020 WL 4053972, at *5 (W.D. Wis. 2020) (citations omitted). According to the Complaint, Byers had access to toilet paper at all times and therefore had the ability to clean himself.

Byers does not describe an outright denial of this item. He routinely received two rolls of toilet tissue per week.[3] He does not complain about the denial of other hygiene supplies, such as running water, soap, washcloths, towels, undergarments, *etc*. In fact, Byers points to no physical injury resulting from the limitation on his toilet paper.

The Seventh Circuit has dismissed claims arising from the outright denial of toilet tissue on a temporary basis, where the only harm was "unpleasantness." *See Harris v. Fleming*, 839 F.2d at 1235-36 (total deprivation of toilet paper for five days); *Dye v. Lomen*, 40 Fed. Appx. 993 (7th

---

[3] Moreover, he describes a bartering situation, involving other inmates who were willing to part with one roll of toilet paper in exchange for additional food from Byers. These inmates presumably deemed one roll sufficient for proper cleaning.

Cir. 2002) (total deprivation of toilet paper for "several" days).  Byers' complaint, arising from his access to two rolls of toilet tissue per week instead of three, is not objectively, sufficiently serious to support an Eighth Amendment claim.  *Id*.

In addition, Byers does not assert that this deprivation resulted from the unnecessary and wanton infliction of pain upon him by the defendants.  On the contrary, the reduction in toilet paper coincided with the nationwide shortage of toilet tissue that occurred for everyone at the beginning of the COVID-19 pandemic.  Although the allegations suggest that the rationing continues, Byers does not state that the defendants limited his toilet tissue in order to punish him.  Given this, the Court finds that Byers has also failed to satisfy the subjective component of this claim.  Count 3 shall be dismissed without prejudice for failure to state a claim.

### Count 4

Given the dismissal of Count 3 for failure to state a claim, Byers' related Eighth Amendment claim for injunctive relief against the defendants, in their official capacities and pursuant to *Bivens*, also fails.  Accordingly, Count 4 shall be dismissed without prejudice for failure to state a claim for relief.

**B.     FTCA Claims**

The FTCA allows civil actions for money damages against the United States for personal injury or death caused by the negligent or wrongful act or omission of any Government employee while acting within the scope of his or her office or employment.  *See* 28 U.S.C. § 1346(b)(1).  The FTCA claim in this case arises from the rationing of toilet tissue at USP-Marion.  When considering an FTCA claim, the Court looks to the law of the state where the misconduct occurred.  *Augutis v. United States*, 732 F.3d 749, 752 (7th Cir. 2013).  In this case, the alleged misconduct occurred in Illinois.  Therefore, these claim are analyzed under Illinois state law.

**Count 5**

In Count 5, Byers brings a claim for negligence against the defendants in connection with his personal toilet paper shortage.  In order to state a negligence claim under Illinois state law, a complaint must allege facts to establish that the defendant owed him a duty of care, breached that duty, and the breach was the proximate cause of his injury.  *Thompson v. Gordon*, 948 N.E.2d 39, 45 (Ill. 2011).  Byers baldly asserts that all defendants breached their duty to provide him with adequate toilet paper.  He relies entirely on threadbare assertions to support this claim, which he cannot do under *Twombly*, 550 U.S. at 570.  The FTCA claim against the United States in Count 5 shall be dismissed without prejudice.

**Count 6**

In Count 6, Byers brings a claim for civil conspiracy among the named federal officials. In order to prevail on this claim under Illinois law, a plaintiff must demonstrate: "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff."  *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (citing *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999)).  The allegations offered in support of this claim are also conclusory and threadbare.  Byers fails to articulate a plausible civil conspiracy claim involving any federal officers.  The FTCA claim against the United States in Count 6 shall be dismissed without prejudice.

**Count 7**

In Count 7, Byers maintains that the reduction in toilet paper beginning March 2020 amounted to an intentional infliction of emotional distress.  To proceed with this claim under the

11

FTCA, he must show that the BOP officials acted in an extreme and outrageous way, intended to inflict severe emotional distress or knew of the high probability that it would occur, and caused the plaintiff to suffer from severe emotional distress. *See Doe v. Calumet City*, 641 N.E.2d 498, 506-07 (Ill. 1994) (citing Restatement (Second) of Torts § 46, comment d (1965)).  Byers has made no such showing.  He again relies on a bald assertion that he suffered extreme emotional distress because he lacked access to his pre-pandemic levels of toilet tissue.  However, he put forth no allegations suggesting that BOP officials acted in an extreme or outrageous manner, intended to cause severe emotional distress, or actually caused him to suffer severe emotional issues.  The FTCA claim against the United States in Count 7 shall also be dismissed without prejudice.

### Disposition

**IT IS ORDERED** that although the Complaint (Doc. 1-1) was properly removed to this Court, it does not survive preliminary review under 28 U.S.C. § 1915A and is **DISMISSED** without prejudice for failure to state a claim for relief against the defendants.

**IT IS ORDERED** that **COUNTS 1, 2, 3,** and **4** are **DISMISSED** without prejudice against Defendants **SPROUL, LeCLAIR, WINN,** and **HOTTES**.

**IT IS ORDERED** that the **UNITED STATES** is **SUBSTIUTED** in place of Defendants **SPROUL, LeCLAIR, WINN,** and **HOTTES** in **COUNTS 5, 6,** and **7**.  However, **COUNTS 5, 6,** and **7** are **DISMISSED** without prejudice against the **UNITED STATES** because the allegations articulate no claim against this defendant under the Federal Tort Claims Act.  The Clerk's Office is **DIRECTED** to **ADD** and **TERMINATE** the **UNITED STATES** as a defendant in CM/ECF.

On or before **May 20, 2022**, Plaintiff is **GRANTED** leave to file a "First Amended Complaint."  Should he fail to file an amended complaint within the allotted time or consistent with the instructions in this Order, the entire case shall be dismissed with prejudice for failure to

12

comply with a court order and/or prosecute his claims. FED. R. CIV. P. 41(b); *Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915(e)(2).

It is strongly recommended that Plaintiff use the civil rights complaint form designed for use in this District. He should label the form, "First Amended Complaint," and he should use the case number for this action (No. 21-cv-01718-JPG). To enable Plaintiff to comply with this Order, the **CLERK** is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

An amended complaint generally supersedes and replaces prior versions, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n. 1 (7th Cir. 2004). The amended complaint must stand on its own without reference to any previous pleading. Plaintiff must re-file any exhibits he wishes the Court to consider. The amended complaint is also subject to review pursuant to 28 U.S.C. § 1915A.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

 **IT IS SO ORDERED**.

 **DATED: 4/21/2022**

 s/J. Phil Gilbert
 **J. PHIL GILBERT**
 **United States District Judge**